FILED    ENTERED
LODGED    RECEIVED

JAN 1 4 2008   LK

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

LANCE ARMBRUSTER, on behalf of himself
and all others similarly situated,

Plaintiff,

v.

CELLCYTE GENETICS CORPORATION,
GARY A. REYS, RONALD W. BERNINGER,
ROBERT H. HARRIS, G. BRENT PIERCE
and JAMES L. RAPHOLZ,

Defendants.

No. C 08-0047 RSL

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF THE FEDERAL
SECURITIES LAWS

**JURY TRIAL DEMANDED**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



08-CV-00047-CMP

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS
Case No.

010011-11 217426 V1

**ORIGINAL**



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## I.     SUMMARY AND OVERVIEW

1.     Plaintiff alleges the following based upon the investigation of Plaintiff's counsel. The investigation included a review of United States Securities and Exchange Commission ("SEC") filings by Company ("CellCyte Genetics Corporation", "CGN" or the "Company"), regulatory filings and reports, securities analysts' reports, public statements issued by the Company, and media reports. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## II.     NATURE OF THE ACTION

2.     This is a securities class action on behalf of purchasers of the securities of CellCyte Genetics Corporation between April 6, 2007 to January 9, 2008, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## III.     JURISDICTION AND VENUE

3.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 US.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated there under by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

4.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act [15 US.C. §78aa].

5.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

6.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 1
Case No.

010011-11 217426 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

## IV.    PARTIES

7.      Plaintiff Lance Armbruster, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of CellCyte Genetics Corporation at artificially inflated prices during the Class Period and has been damaged thereby.

8.      Defendant CellCyte Genetics Corporation was incorporated as Shepard Inc. on March 9, 2004 in the state of Nevada and changed its name to CellCyte Genetics Corporation ("CGN") effective February 16, 2007, when it was acquired by CellCyte for approximately $1 million as a vehicle to go public without using the usual IPO process. The Company's headquarters is at 1725 220th Street SE, Bothell, Washington 98021. The Company's shares are traded on the over-the-counter (OTC) market under the symbol CCYG and on Germany's Frankfurt Stock Exchange.

9.      Defendant Gary A. Reys ("Reys") served as CellCyte Genetics Corporation's Chairman, President, Chief Executive Officer, Principal Executive Officer and a director during the Class Period. Mr. Reys owns 18,625,000 shares or 31.2% of the Company based on 59,649,225 shares of the Company outstanding as of March 30, 2007. According to the Company's prospectus effective July 11, 2007, Reys may be considered a "promoter" of the Company.

10.      Defendant Dr. Ronald W. Berninger, Ph.D. ("Berninger") served as CellCyte Genetics Corporation's Secretary, Treasurer, Executive Vice-President and a director during the Class Period. Mr. Berninger owns 18,625,000 shares or 31.2% of the Company based on 59,649,225 shares of the Company outstanding as of March 30, 2007. According to the Company's prospectus effective July 11, 2007, Berninger may be considered a "promoter" of the Company.

11.      Defendant Robert H. Harris was a director of the Company from December 5, 2006 until April 16, 2007 when he resigned. According to a filing on Form 8-K with the SEC,

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 2
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1  the Board of Directors (the "Board") of Shepard Inc. (the "Company") accepted the consent to

2  act as director of the Company from Robert Harris (the "Appointment"), effective as of

3  December 5, 2006.  From October 2003 to present, Harris had been self-employed in Vancouver,

4  British Columbia, Canada as a management and administration consultant in the private business

5  sector with an emphasis on corporate financial reporting.  From April 2001 to September 2003,

6  Harris was a director and the secretary/treasurer of inCall Systems, Inc., a publicly traded

7  company on the Over-the Counter Bulletin Board with a wholly owned operating subsidiary in

8  Singapore that provided outsourced call center services and specialized in live online sales

9  assistance for the Internet and digital media.  Harris also acted as senior executive assistant to the

10  chief executive officer of inCall Systems, coordinating and managing corporate presentations in

11  addition to coordinating bookkeeping and audit teams in Vancouver and Singapore for quarterly

12  reviews, audits and regulatory filings.  For twenty-five years, Harris was active in the music and

13  recording industry, specializing in concert and event production, artist management and

14  representation, and the production and marketing of recorded musical works.  He also was active

15  in the sports entertainment industry, specifically in connection with sports information

16  technology used in Major League Baseball and PGA Golf.  Harris has obtained a certificate in

17  "Organizing and Managing a Public Company" from the Securities Program, Faculty of Business

18  Administration, Simon Fraser University Harbour Centre in Vancouver.  Mr. Harris sold over 18

19  million shares of the Company in March of 2007 but retained 2,250,000 shares or 3.8% of the

20  Company based on 59,649,225 shares of the Company outstanding as of March 30, 2007.

21  According to the Company's prospectus effective July 11, 2007, Harris may be considered a

22  "promoter" of the Company.

23        12.  Defendant G. Brent Pierce is a Canadian stock promoter, and president of

24  Stockgroup AG, a stock-promotion firm based in Zurich, with offices in Bellingham,

25  Washington.  Pierce is a Canadian citizen barred by the B.C. Securities Commission from

26  trading shares or acting as an officer of any B.C. public company until 2008.  In the 1993

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 3
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1   settlement that led to the ban, he acknowledged presenting false documents to the commission

2   and diverting funds from a small public stock offering to his own use.  According to the

3   Company's prospectus effective July 11, 2007, Pierce owned or controlled 1,666,666 shares of

4   the Company, or 2.7%, as an officer of Newport Capital Corp., and his wife, Dana Pierce, owned

5   333,332 shares.  Those shares were worth about $12.2 million in early October 2007, with Dana

6   Pierce's shares worth an additional $2.5 million.  Pierce's firm was behind a colorful 12-page

7   mailer distributed since early October to potential U.S. buyers of the stock entitled "James

8   Rapholz's Economic Advice."  By virtue of his promotional conduct, Pierce was a primary

9   participant in the sale of Company stock.

10         13.     Defendant James L. Rapholz ("Rapholz") is an investment newsletter publisher

11  and editor of Economic Advice, who "offers his subscribers his best recommendations for select

12  stocks.  His newsletter highlights company financials, as well as important detailed information

13  to make prudent investment decisions.  Subscribers also receive timely buy-sell-hold

14  recommendations and exclusive market commentary and forecasts."  His place of business is

15  3907 N. Federal Hwy #185, Pompano Beach, FL 33064-9889.  He is also president of Rapholz

16  Silver, Inc.  Rapholz was paid $445,000 by Pierce to produce and distribute "James Rapholz's

17  Economic Advice".  His economic advice was used to sell the Company's stock.

18         14.     Defendants Reys, Berninger, Harris, Pierce and Rapholz are, collectively, the

19  "Individual Defendants."

20         15.     The Individual Defendants who were officers and/or directors of the Company, by

21  virtue of their position with the Company, gave them access to the adverse undisclosed

22  information about the Company's business, operations, operational trends, financial statements,

23  markets and present and future business prospects via access to internal corporate documents

24  (including the Company's operating plans, budgets and forecasts and reports of actual operations

25  compared thereto), conversations and connections with other corporate officers and employees,

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1    attendance at management and Board of Directors meetings and committees thereof and via

2    reports and other information provided to them in connection therewith.

3        16.    The Individual Defendants are pled as a group based on the presumption that the

4    false, misleading and incomplete information conveyed in the Company's public filings, press

5    releases and other publications as alleged herein are the collective actions of the narrowly

6    defined group of Defendants identified above.  Each of the above officers of CellCyte Genetics

7    Corporation, by virtue of their high-level positions with the Company, directly participated in the

8    management of the Company, can be presumed to have been directly involved in the day-to-day

9    operations of the Company at the highest levels and was privy to confidential proprietary

10   information concerning the Company and its business, operations, growth, financial statements,

11   and financial condition, as alleged herein.  The non-officer/director Defendants had access to the

12   truth by virtue of their close positions to the officer/director Defendants.

13       17.    As officers and controlling persons of a publicly-held company whose common

14   stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded

15   publicly, and governed by the provisions of the federal securities laws, the Individual Defendants

16   who were company officers and/or directors each had a duty to disseminate promptly, accurate

17   and truthful information with respect to the Company's financial condition and performance,

18   growth, operations, financial statements, business, markets, management, earnings and present

19   and future business prospects, and to correct any previously-issued statements that had become

20   materially misleading or untrue, so that the market price of the Company's publicly-traded

21   common stock would be based upon truthful and accurate information.  The Individual

22   Defendants' misrepresentations and omissions during the Class Period violated these specific

23   requirements and obligations.

24       18.    The Individual Defendants participated in the drafting, preparation, and/or

25   approval of the various public and shareholder and investor reports and other communications

26   complained of herein and were aware of, or recklessly disregarded, the misstatements contained

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 5
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1    therein and omissions there from, and were aware of their materially false and misleading nature.

2    As to the officers or Board Members, because of their Board membership and/or executive and

3    managerial positions with CellCyte Genetics Corporation, each of the Individual Defendants had

4    access to the adverse undisclosed information about CellCyte Genetics Corporation's business

5    prospects and financial condition and performance as particularized herein and knew (or

6    recklessly disregarded) that these adverse facts rendered the positive representations made by or

7    about CellCyte Genetics Corporation and its business issued or adopted by the Company

8    materially false and misleading.

9          19.    The Individual Defendants who were officers or directors, because of their

10   positions of control and authority as officers and/or directors and/or ownership of the Company,

11   were able to and did control the content of the various SEC filings, press releases and other

12   public statements pertaining to the Company during the Class Period. Each Individual

13   Defendant was provided with copies of the documents alleged herein to be misleading prior to or

14   shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or

15   cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for

16   the accuracy of the public reports and releases detailed herein and is therefore primarily liable for

17   the representations contained therein.

18         20.    Each of the Defendants is liable as a participant in a fraudulent scheme and course

19   of business that operated as a fraud or deceit on purchasers of CellCyte Genetics Corporation

20   common stock by disseminating materially false and misleading statements and/or concealing

21   material adverse facts. The scheme: (i) deceived the investing public regarding CellCyte

22   Genetics Corporation's business, operations, management and the intrinsic value of CellCyte

23   Genetics Corporation common stock; and (ii) caused Plaintiff and other members of the Class to

24   purchase CellCyte Genetics Corporation common stock at artificially inflated prices.

25

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 6
Case No.

HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of CellCyte Genetics Corporation during the period April 6, 2007 through January 9, 2008, inclusive, (the "Class") and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

22.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, CellCyte Genetics Corporation common shares were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by CellCyte Genetics Corporation or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

23.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

24.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 7
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, SUITE 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    (b) whether statements made by Defendants to the investing public during the

2 Class Period misrepresented material facts about the business, operations and management of

3 CellCyte Genetics Corporation; and

4    (c) to what extent the members of the Class have sustained damages and the

5 proper measure of damages.

6   26. A class action is superior to all other available methods for the fair and efficient

7 adjudication of this controversy since joining all members is impracticable. Furthermore, as the

8 damages suffered by individual Class members may be relatively small, the expense and burden

9 of individual litigation make it impossible for members of the Class to individually redress the

10 wrongs done to them. There will be no difficulty in the management of this action as a class

11 action.

12         **VI. SUBSTANTIVE ALLEGATIONS**

13   27. Defendant CellCyte Genetics Corporation is a publicly traded corporation which

14 became public through the acquisition of Shepard Inc. in a reverse merger.

15   28. Shepard Inc., according to it Form 10-QSB filed on November 14, 2006, was

16 incorporated in the State of Nevada, U.S.A., on March 9, 2004. The Company has been in the

17 exploration stage since its formation and had not yet realized any revenues from its planned

18 operations. Pursuant to an agreement dated June 9, 2004, the Company has acquired a 100%

19 interest, subject to a 2.5% production royalty, in a mineral prospect located in the Northwest

20 Territories, Canada, for cash consideration of $2,053 and conducted a work program of $5,000.

21 Since the Company has not established the commercial feasibility of the mineral claims, the

22 acquisition and exploration costs have been expensed. During the period from March 9, 2004

23 (inception) to December 31, 2004, the Company issued a total of 5,570,000 common shares for

24 total cash proceeds of $35,000. The Company had authorized the issuance of 75,000,000

25 common shares with a par value of $0.001. For the period ending September 30, 2006, it had a

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 8
Case No.



010011-11 217426 V1

1    loss of $18,814.00 and since inception a loss of $42,350.  The company expected to spend and

2    additional $16,500.00 over the next 12 months.

3        29.    Defendant Harris became a director of the Company, then known as Shepard Inc.

4    on December 5, 2006, and shortly thereafter filed a report on Form 4 showing that he had

5    somehow come to own 3,000,000 shares of Shepard Inc. stock representing 53.9% of all

6    outstanding shares and thus control of the Company.  Michael Eyre, the President and a director

7    of Shepard Inc., filed a From 4 indicating on the same date (December 1, 2007) he disposed of

8    his 1,500,000 shares for $7000, as did Glen MacDonald the Secretary and Treasure and a

9    director.  Presumably Harris paid $14,000 for control of the Company.

10       30.    On January 2, 2007, the Company, through Harris, filed a Form 8-K indicating a 7

11   for 1 stock split increased from 75,000,000 common shares to 525,000,000 common shares, and

12   the Company's issued and outstanding common stock was increased from 5,570,000 common

13   shares to 38,990,000 common shares.  The par value of the Company's common shares, which is

14   $0.001 per common share, has not changed.  Harris' shares thus increased to 21 million shares.

15       31.    On February 2, 2007, the Company filed with the SEC a Form 8-K announcing

16   that it had entered into an agreement in principle with CellCyte Genetics, Inc to merge the

17   Companies.

18       32.    On February 16, 2007, the Company filed with the SEC a Form 8-K stating that

19   Shepard had merged with CellCyte and began trading on the OTC under the new trading symbol

20   CCYG:

21              On February 13, 2007, Shepard Inc. (the "Company") filed
               Articles of Merger with the Secretary of State of Nevada in order
22             to effectuate a merger whereby Shepard Inc. would merge with its
               wholly-owned subsidiary, CellCyte Genetics Corporation, as a
23             parent/subsidiary merger with the Company as the surviving
               corporation.  This merger, which became effective as of February
24             16, 2007, was completed pursuant to Section 92A.180 of the
               Nevada Revised Statutes ("NRS").  Shareholder approval to this
25             merger was not required under Section 92A.180 of the NRS.  Upon
               completion of this merger the Company's name has been changed

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 9
Case No.



010011-11 217426 V1

1  to "CellCyte Genetics Corporation" and the Company's Articles of
   Incorporation have been amended to reflect this name change.

2

3  In connection with this name change to CellCyte Genetics
   Corporation, as of the open of business on February 16, 2007, the
   Company has the following new CUSIP number and trading
4  symbol:

5  New CUSIP Number:   15116P 10 3.

6  New Trading Symbol:   CCYG.

7  The Company decided to change its name to "CellCyte Genetics
   Corporation" because, as disclosed in the Company's Current
8  Report on Form 8-K dated January 26, 2007 (the "January 26,
   2007 Current Report"), the Company entered into an agreement in
9  principle (the "Agreement in Principle") on January 26, 2007 with
   CellCyte Genetics, Inc. ("CellCyte") and a shareholder of CellCyte
10 (together with the other shareholders of CellCyte that are to be
   parties to a formal agreement to replace the Agreement in
11 Principle, the "Vendors") in connection with the proposed
   acquisition by the Company from the Vendors of all of the issued
12 and outstanding shares of CellCyte.  A summary of such
   Agreement in Principle is provided in the Company's January 26,
13 2007 Current Report, and a copy such Agreement in Principal has
   been filed as an exhibit to the Company's January 26, 2007
14 Current Report.

15 The Company is informed that CellCyte, a Washington State
   company, is an emerging biotechnology company that is in the
16 principle business of the discovery and development of
   breakthrough stem cell enabling therapeutics products.
17

18 33.    Trading data for the Company's stock commences on February 15, 2007 when the

19 Company's stock is reported to trade at a stock price of $5 per share on a volume to 800 shares.

20 34.    According to the Company's SEC filings, the first trade in the Company's

21 common stock occurred on or about March 23, 2007, meaning that all prior trades were by

22 insiders. As of the Company's first prospectus, filed on July 16, 2007, there were only 100

23 registered shareholders of the Company's stock, including each of the Individual Defendants.

24 35.    On April 6, 2007, the Company filed with the SEC a report on Form 8-K

25 announcing the completion of "the acquisition of all of the issued and outstanding shares (the

26 "Purchased Shares") of CellCyte (the "Closing") pursuant to a Share Exchange Agreement

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 10
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    among CellCyte, the shareholders of CellCyte (the "Vendors") and the Company dated as fully

2    executed on March 14, 2007 (the "Share Exchange Agreement"). This "reverse merger"

3    represented a change in control of the Company. As a consequence, the Company was no longer

4    in the mining business and became "a company focused on the discovery and development of

5    stem cell enabling therapeutic products." The Form 8-K stated that as of the Closing Reys

6    became Chairman, President, Chief Executive Officer, Principal Executive Officer and a

7    director, and Berninger became Secretary, Treasurer, Executive Vice-President and a director.

8         36.    The Form 8-K also represented the credentials of Reys as follows:

9              *Mr. Reys brings over 30 years of experience with both*
               *international Fortune 100 and 500 publicly traded companies*
10             *and emerging-growth companies in the pharmaceutical,*
               *biotechnology and medical device sectors.* He held executive
11             positions with Pfizer and with Rhone Poulenc Rorer (now
               Aventis), North America. Mr. Reys was one of the pioneers in the
12             generic pharmaceutical industry as part of a five member founding
               executive team forming Schein Pharmaceutical, taking the
13             company through an IPO and the acquisition by Bayer AG. Mr.
               Reys served in various capacities for Goldline Laboratories,
14             positioning the company for the acquisition by IVAX, an
               international pharmaceutical holding company (now Teva
15             Pharmaceutical), retiring from IVAX as Vice President of Business
               Development in 1993. Mr. Reys served as Executive Vice
16             President and Chief Financial Officer of IBV Technologies, a
               division of the McKesson Corporation from May 1994 to
17             December 1997. Mr. Reys served as Chief Executive Officer and
               President of Genespan, a cell expansion and DNA biotechnology
18             company from January 1998 to February 2000. Mr. Reys served
               as Chief Executive Officer, President and Chief Financial Officer
19             for Clear Medical from February 2000 to March 2001, where he
               positioned the company as the first FDA approved high-level
20             disinfectant re-processor of medical devices. Mr. Reys co-founded
               and served as the President and Chief Executive Officer of
21             Cennapharm, a biopharmaceutical company from April 2001 to
               May 2003. Mr. Reys co-founded CellCyte Genetics in June 2003.
22             Mr. Reys attended the University of Washington where he majored
               in finance, later receiving a CPA designate. Mr. Reys is a past
23             member of the Washington Society of Certified Public
               Accountants. He also serves as a member of the University of
24             Washington's Graduate School, M.B.A. Mentor Advisory Board.
               [Emphasis added.]

25

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 11
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

37. On July 16, 2007, The Company filed a Prospectus on Form 424B1 with the SEC offering to the public 9,523,448 shares of the common stock of the Company.

38. The prospectus repeated the qualifications of Reys.

39. On December 9, 2007 (corrected on December 25, 2007), the Seattle Times wrote a story questioning the run-up on CellCyte's stock:

> For years, the founders of CellCyte Genetics relied on infusions from angel investors to keep their tiny startup afloat. But after Kirkland-based CellCyte combined with a moribund public company, its shares caught fire this fall in the loosely regulated over-the-counter (OTC) market and on Germany's Frankfurt Stock Exchange.
>
> A wave of glossy brochures and spam faxes, touting CellCyte with lofty claims, has helped propel the company's total market value to more than $440 million. That's greater than many local biotechs that are far more advanced in developing therapies. Suddenly, the two founders each have a stake worth about $137 million.
>
> The barrage of hype has been bankrolled, to the tune of hundreds of thousands of dollars, by an outside stockholder — a man whom British Columbia securities regulators have barred from their industry for 15 years.
>
> CellCyte Genetics Chief Executive Gary Reys says he is not concerned about that history, and insists he has no role in the promotional push.
>
> He says the skyrocketing trading volume is simply an "amazing" show of investor confidence in his company's technology for manipulating stem cells, which is still a year away from its first early-stage clinical trials.
>
> A former mining stock
>
> CellCyte bought an inactive B.C. mining company whose stock trades in the OTC market in the U.S., and completed a private placement that let a well-known Canadian promoter of penny stocks acquire millions of shares. A few months later, the spamming began.
>
> That's a pattern familiar to the B.C. Securities Commission, which is trying to crack down on stock-promotion schemes. It "is not untypical of the problem we're facing," said Martin Eady, head of corporate finance at the B.C. Securities Commission.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 12
Case No.

010011-11 217426 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

The commission is writing new rules to restrict what Eady calls a "subculture" of pump-and-dump stock promoters that have thrived in B.C. by taking a large position in an inexpensive stock, hyping it, and unloading it onto unsuspecting investors.

Reys maintains that the acquisition of a shell company is a legitimate way of tapping investors while the firm prepares to enter a major regulated market such as Nasdaq. He said CellCyte isn't a fly-by-night company, it's a "brick-and-mortar organization" with experienced researchers and patented technology.

As for the spam activity, he said, "We have no control over it."

Spammed

Last month, investors participating in German stock message boards began asking questions about an unsolicited fax they'd received promoting CellCyte. The fax reproduced a positive story about the company from the weekly newsmagazine Focus Money, based in Offenburg.

There was also a handwritten note in German: "This is the stock that's about to take off! Greetings, Paul."

In a copy of the fax obtained by The Seattle Times, dated Nov. 19, the fax sender is identified as Stockgroup AG. That's a stock-promotion firm based in Zurich, with offices in Bellingham, according to Swiss government records.

The firm's president, G. Brent Pierce, is a Canadian citizen barred by the B.C. Securities Commission from trading shares or acting as an officer of any B.C. public company until 2008. In the 1993 settlement that led to the ban, he acknowledged presenting false documents to the commission and diverting funds from a small public stock offering to his own use.

Pierce controls about 1.66 million shares of CellCyte through a company called Newport Capital Group, according to a regulatory filing with the Securities and Exchange Commission. Those shares were worth about $12.2 million as of Friday, and his wife, Dana Pierce, owns shares worth an additional $2.5 million.

Pierce's firm is also behind a colorful 12-page mailer distributed since early October to potential U.S. buyers of the stock.

Titled "James Rapholz's Economic Advice," the brochure says CellCyte shares "could be the chance of your lifetime to turn $10,000 into $4 million, maybe even $15 million!"



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1    "This could be the most astonishing investment opportunity since
     the microchip," it says elsewhere. "This truly could be the most
2    astonishing and important medical breakthrough in your lifetime!"

3    . The fine print at the back of the brochure discloses that Stockgroup
     AG, Pierce's company, paid Rapholz $445,000 to produce and
4    distribute the mailer. Rapholz, who is based in Florida, didn't
     return several calls seeking comment.
5
     The article reproduced in the German spam faxes, meanwhile,
6    cited a research report by an analyst named Matthias Redenbach of
     Midas Research.
7
     The report itself discloses that Midas was paid to write it by
8    Michael Drepper Communications, of Mannheim, Germany.
     Drepper's name appears alongside that of Brent Pierce as an
9    investor-relations contact in many Frankfurt-traded companies.

10   Reys said he was aware of Rapholz's newsletter, but had never
     seen the fax in German, though it is easily found on the German
11   chat boards discussing CellCyte stock. ·

12   His lawyers investigated Pierce and found nothing wrong, Reys
     added.
13
     A review of regulatory filings shows Pierce's Stockgroup AG has
14   also promoted other U.S. companies with low-priced shares where
     he controlled a large block of stock.
15
     One was oil exploration firm Lexington Resources, whose worth
16   plummeted from about $40 million in the summer of 2006 to less
     than $1 million as of Friday. Another, Morgan Creek Energy, saw
17   its share price drop to 32 cents after trading as high as $5.30 in
     October 2006. Both companies traded on the OTC and in German
18   stock exchanges.

19   Pierce did not respond to messages left at his company's
     Bellingham office.
20
     On a separate front, CellCyte's auditor also has regulatory issues.
21   Just months after the firm, Williams & Webster of Spokane, signed
     off on CellCyte's 2006 financial statements, the national Public
22   Company Accounting Oversight Board in June took the unusual
     step of barring one of its two name partners from associating with
23   any accounting firm, and suspended the other for a year, over
     inadequate scrutiny of a different public company.
24
25   40.    The 12 page brochure financed by Pierce and written and distributed by Rapholz

     repeated the claims of Reys's experience.
26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 14
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1       41.    During the first week in January, Cellcyte removed from its website claims made

2   about Reys's experience after an inquiry by the Seattle Times.  Coincident with this removal, the

3   Company's shares began to plummet as investors lost confidence in the credibility of the

4   Company.

5       42.    On January 9, 2008, the Seattle Times wrote in an article entitled, "CellCyte

6   shares plummet; questions raised about CEO's bio" the following:

7           Shares in fledgling biotechnology company CellCyte Genetics,
        whose market value soared to more than $400 million last fall after
8           being hyped by offshore shareholders, plunged 55 percent Monday
        and Tuesday in heavy selling.

9
        The sharp drop coincided with changes made on the company's
10          Web site after The Seattle Times inquired late last week about the
        accuracy of statements in the biography of CellCyte chief
11          executive and co-founder Gary Reys.

12          Claims removed from the Web site include statements that Reys
        had led his previous company "from conception to early human
13          clinical trials in 18 months," and that he had helped an early
        generic pharmaceuticals company through an initial stock offering
14          and a sale to a drug-industry giant.

15          Reys said any inaccuracies in his profile were unintentional.

16          "We at CellCyte strive to be ... truthful and endeavor to display
        integrity to the public and insist (on) that with our personnel," he
17          wrote in an e-mail.  "If an error is brought to our attention we
        correct it immediately ... "

18
        But other misleading statements remain on the company's site and
19          in the filing it made with the Securities and Exchange Commission
        to begin trading its shares.

20
        Both documents state that he "attended the University of
21          Washington and majored in finance."  According to university
        records, however, he enrolled in autumn 1965 and withdrew within
22          weeks; he did not receive any credits toward a degree.

23          Asked about the discrepancy, Reys said in an e-mail that he
        attended some night-school business classes at the university and
24          was forced to withdraw from the full-time program due to financial
        hardship.  He said he later enrolled at Auerswald's Business
25          University, a one-time Seattle business college.

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS  - 15
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

Both documents say Reys received a "CPA designate," and until late last week the Web site said he was a past member of the Washington Society of Certified Public Accountants. But the Washington state Board of Accountancy says he is not registered as a certified public accountant, nor does it have any record that Reys took the CPA test in the state.

Reys said that in 1967 he passed the test on his second try after enrolling in a CPA coaching course at Auerswald's, and became a member of the Washington Society of CPAs until 1969. He added that he never claimed to be "a practicing CPA."

Reys' membership in the association couldn't be verified because the association's records, unlike the Board of Accountancy's, do not extend back to the 1960s.

The SEC filing says that in addition to being chairman, president and CEO at CellCyte, Reys is its chief financial officer and principal accounting officer.

The background of executives plays an outsized role in biotech companies' bid to attract investors, said Paul Latta, a Seattle-based analyst with McAdams Wright Ragen.

"If you can bring management to the table who has a track record of getting drugs through the process, it automatically brings credibility," he said.

Conversely, inaccurate biographical information in SEC filings could open the door to legal action from shareholders, said University of Washington law professor Sean O'Connor.

"Whatever you disclose to the SEC has to be correct, and can't be misleading," said O'Connor, a specialist on securities law. "Often the company was sold to investors based on the strength of the founders."

Major stockholder

Reys owns about a third of CellCyte's shares after a transaction last February when the then-private company combined with a shell company with shares trading in the loosely regulated OTC Bulletin Board and in Frankfurt.

Some 2 million shares of CellCyte are controlled by G. Brent Pierce, a stock promoter banned by the British Columbia Securities Commission, who paid hundreds of thousands of dollars for a campaign of spam faxes and glossy mailers touting the company's stem-cell technology in the U.S. and Germany.

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 16
Case No.

010011-11 217426 V1



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

A regulator in B.C. said last month that such tactics are commonly used in "pump-and-dump" schemes to inflate a small company's shares before selling out.

Reys said CellCyte is not responsible for the promotional activity, and that its foray into alternative markets is a legitimate step on its way to a major trading floor like Nasdaq.

The company employs 16 people and recently moved from its startup offices in Kirkland to a larger facility in Bothell.

In a November interview, Reys said investors' faith in the company's patented technology was the reason for its large market capitalization, which at the time made it the area's fourth-most-valuable biotech.

But as of Tuesday, stockholders seemed to have had a change of mind. The company's value was more than halved in two days, to $188 million. Selling volume Tuesday was the highest in the company's eight-month history of trading.

Pharmaceutical background

Reys' CellCyte profile refers to executive stints with Pfizer and Rhone Poulenc Rorer. But it also describes him as part of a "five member founding executive team forming Schein Pharmaceutical, taking the company through an IPO and the acquisition by Bayer AG."

Reys said he was the Western sales manager when Schein Pharmaceutical was formed in 1985. But he acknowledged that *he'd left before Bayer bought a 28 percent stake in 1994 and the 1998 IPO.*

"In my profile the wording was meant to state events about Schein and has been reworded since," he said by e-mail. "This was not meant to deceive anyone, just a mistake in sequences and, indeed, I was not with Schein at the time of those events."

That claim was absent from the company's Web site Monday, but was back on there as of Tuesday.

CellCyte also eliminated some references to Reys' role in bringing his previous company, Cennapharm, to early clinical trials in humans. Reys' tenure at the company ended in 2003, and was followed by a bitter legal dispute with the company's founders; court documents in that dispute say the company never tested its product on people. [Emphasis added.]

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 17
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900 • Seattle, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1       43.    CellCyte's stock plummeted with these changes from a high of $7.02 on January

2   4, 2008 to as low as $2.20 on January 9, 2008.

3       44.    The market for CellCyte Genetics Corporation's common stock was open, well-

4   developed and efficient at all relevant times. As a result of these materially false and misleading

5   statements and failures to disclose, CellCyte Genetics Corporation's common stock traded at

6   artificially inflated prices during the Class Period. Plaintiff and other members of the Class

7   purchased or otherwise acquired CellCyte Genetics Corporation common stock relying upon the

8   integrity of the market price of CellCyte Genetics Corporation's common stock and market

9   information relating to CellCyte Genetics Corporation, and have been damaged thereby.

10       45.    During the Class Period, Defendants materially misled the investing public,

11   thereby inflating the price of CellCyte Genetics Corporation's common stock, by publicly

12   issuing false and misleading statements and omitting to disclose material facts necessary to make

13   Defendants' statements, as set forth herein, not false and misleading. Said statements and

14   omissions were materially false and misleading in that they failed to disclose material adverse

15   information and misrepresented the truth about the Company, its business and operations, as

16   alleged herein.

17       46.    At all relevant times, the material misrepresentations and omissions particularized

18   in this Complaint directly or proximately caused or were a substantial contributing cause of the

19   damages sustained by Plaintiff and other members of the Class. As described herein, during the

20   Class Period, Defendants made or caused to be made a series of materially false or misleading

21   statements about CellCyte Genetics Corporation's business, prospects and operations. These

22   material misstatements and omissions had the cause and effect of creating in the market an

23   unrealistically positive assessment of CellCyte Genetics Corporation and its business, prospects

24   and operations, thus causing the Company's common stock to be overvalued and artificially

25   inflated at all relevant times. Defendants' materially false and misleading statements during the

26

CLASS ACTION COMPLAINT FOR VIOLATIONS
OF FEDERAL SECURITIES LAWS - 18
Case No.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1    Class Period resulted in Plaintiff and other members of the Class purchasing the Company's

2    common stock at artificially inflated prices, thus causing the damages complained of herein.

3                **VII.    ADDITIONAL SCIENTER ALLEGATIONS**

4        47.     As alleged herein, Defendants acted with scienter in that Defendants knew that

5    the public documents and statements issued or disseminated in the name of the Company were

6    materially false and misleading; knew that such statements or documents would be issued or

7    disseminated to the investing public; and knowingly and substantially participated or acquiesced

8    in the issuance or dissemination of such statements or documents as primary violations of the

9    federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their

10    receipt of information reflecting the true facts regarding CellCyte Genetics Corporation, their

11    control over, and/or receipt and/or modification of CellCyte Genetics Corporation's allegedly

12    materially misleading misstatements and/or their associations with the Company which made

13    them privy to confidential proprietary information concerning CellCyte Genetics Corporation,

14    participated in the fraudulent scheme alleged herein.

15    **VIII.  APPLICABILITY OF PRESUMPTION OF RELIANCE:  FRAUD ON THE**
                                 **MARKET DOCTRINE**

16

17        48.     At all relevant times, the market for CellCyte Genetics Corporation's common

   stock was an efficient market for the following reasons, among others:

18

19        49.     CellCyte Genetics Corporation stock met the requirements for listing, and was

   listed and actively traded on the OTC, a highly efficient and automated market;

20

21        50.     As a regulated issuer, CellCyte Genetics Corporation filed periodic public reports

   with the SEC;

22

23        51.     CellCyte Genetics Corporation regularly communicated with public investors via

   established market communication mechanisms, including through regular disseminations of

24

   press releases on the national circuits of major newswire services and through other wide-

25

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11  217426 V1

1    ranging public disclosures, such as communications with the financial press and other similar

2    reporting services; and

3         52.    CellCyte Genetics Corporation was followed by several securities analysts

4    employed by major brokerage firms who wrote reports which were distributed to the sales force

5    and certain customers of their respective brokerage firms. Each of these reports was publicly

6    available and entered the public marketplace.

7         53.    As a result of the foregoing, the market for CellCyte Genetics Corporation's

8    common stock promptly digested current information regarding CellCyte Genetics Corporation

9    from all publicly available sources and reflected such information in CellCyte Genetics

10   Corporation's stock price. Under these circumstances, all purchasers of CellCyte Genetics

11   Corporation's common stock during the Class Period suffered similar injury through their

12   purchase of CellCyte Genetics Corporation's common stock at artificially inflated prices and a

13   presumption of reliance applies.

14                        IX.    NO SAFE HARBOR

15        54.    The statutory safe harbor provided for forward-looking statements under certain

16   circumstances does not apply to any of the allegedly false statements pleaded in this complaint.

17   Many of the specific statements pleaded herein were not identified as "forward-looking

18   statements" when made. To the extent there were any forward-looking statements, there were no

19   meaningful cautionary statements identifying important factors that could cause actual results to

20   differ materially from those in the purportedly forward-looking statements. Alternatively, to the

21   extent that the statutory safe harbor does apply to any forward-looking statements pleaded

22   herein, Defendants are liable for those false forward-looking statements because at the time each

23   of those forward-looking statements was made, the particular speaker knew that the particular

24   forward-looking statement was false, and/or the forward-looking statement was authorized

25   and/or approved by an executive officer of CellCyte Genetics Corporation who knew that those

26   statements were false when made.



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1

## X.    LOSS CAUSATION/ECONOMIC LOSS

2        55.      During the Class Period, as detailed herein, Defendants engaged in a scheme to

3    deceive the market and a course of conduct that artificially inflated CellCyte Genetics

4    Corporation's stock price and operated as a fraud or deceit on Class Period purchasers of

5    CellCyte Genetics Corporation stock by misrepresenting the Company's operating success and

6    future business prospects. Defendants achieved this façade of success, growth and strong future

7    business prospects by blatantly misrepresenting the selling success of the Company's products

8    and its internal operations. Later, however, when Defendants' prior misrepresentations and

9    fraudulent conduct were disclosed and became apparent to the market, CellCyte Genetics

10   Corporation stock fell precipitously as the prior artificial inflation came out of CellCyte Genetics

11   Corporation's stock price. As a result of their purchases of CellCyte Genetics Corporation stock

12   during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*,

13   damages under the U.S. federal securities laws.

14                                    **COUNT I**

15   **VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT OF 1934 AND RULE 10B-
     5 PROMULGATED THERE UNDER AGAINST ALL DEFENDANTS**

16

17       56.      Plaintiff incorporates each allegation contained above as if fully set forth herein.

         57.      During the Class Period, Defendants disseminated or approved the materially

18   false and misleading statements specified above, which they knew or deliberately disregarded

19   were misleading in that they contained misrepresentations and failed to disclose material facts

20   necessary in order to make the statements made, in light of the circumstances under which they

21   were made, not misleading.

22       58.      Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made

23   untrue statements of material fact and/or omitted to state material facts necessary to make the

24   statements not misleading; and (c) engaged in acts, practices, and a course of business which

25   operated as a fraud and deceit upon the purchasers of the Company's common stock during the

26



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

1   Class Period. The scheme included: (a) making false statements about the background and

2   experience of Reys; (b) the promulgation of promotional material authored by Pierce that falsely

3   touted the company's success; and (c) the promulgation of promotional material by Rapholz

4   which contained claims about the Company's success that were without basis in fact.

5          59.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity

6   of the market, they paid artificially inflated prices for CellCyte Genetics Corporation common

7   stock. Plaintiff and the Class would not have purchased CellCyte Genetics Corporation common

8   stock at the prices they paid, or at all, if they had been aware that the market prices had been

9   artificially and falsely inflated by Defendants' misleading statements.

10         60.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff

11  and the other members of the Class suffered damages in connection with their purchases of

12  CellCyte Genetics Corporation common stock during the Class Period.

### COUNT II

### VIOLATION OF SECTION 20(A) OF THE EXCHANGE ACT OF 1934 AGAINST THE INDIVIDUAL DEFENDANTS

61.     Plaintiff incorporates each allegation contained above as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of CellCyte Genetics

Corporation within the meaning of Section 20(a) of the Exchange Act as alleged herein. Because

of their positions as officers and/or directors of CellCyte Genetics Corporation, and their

ownership of CellCyte Genetics Corporation stock, the Individual Defendants had the power and

authority to cause CellCyte Genetics Corporation to engage in the wrongful conduct complained

of herein. Because of such conduct, the Individual Defendants are liable pursuant to Section

20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 • SEATTLE, WA 98101
TELEPHONE (206) 623-7292 • FACSIMILE (206) 623-0594

010011-11 217426 V1

1      A.     Determining that this action is a proper class action, designating Plaintiff as Lead

2  Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of

3  Civil Procedure and Plaintiff's counsel as Lead Counsel;

4      B.     Awarding compensatory damages in favor of Plaintiff and the other Class

5  members against all Defendants, jointly and severally, for all damages sustained as a result of

6  Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

7      C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

8  this action, including counsel fees and expert fees; and

9      D.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

11  Plaintiff demands a trial by jury.

12  DATED this 14th day of January, 2008.

13                   HAGENS BERMAN SOBOL SHAPIRO LLP

15                   By

16                      Steve W. Berman, WSBA #12536
                         1301 Fifth Avenue, Suite 2900

17                       Seattle, Washington  98101
                         Telephone: (206) 623-7292

18                       Facsimile: (206) 623-0594

19                       Reed R. Kathrein
                       HAGENS BERMAN SOBOL SHAPIRO LLP

20                       715 Hearst Avenue, Suite 202
                       Berkeley, CA  94710

21                       Telephone:  (510) 725-3000
                       Facsimile:  (510) 725-3001

22                       *Attorneys for Plaintiff*



HAGENS BERMAN
SOBOL SHAPIRO LLP
1301 FIFTH AVENUE, SUITE 2900 ▪ SEATTLE, WA 98101
TELEPHONE (206) 623-7292 ▪ FACSIMILE (206) 623-0594

## CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

Lance Armbruster ("Plaintiff") declares as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a complaint alleging securities fraud against Cellcyte Genetics Corp. and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

| Acquisitions | Date Acquired | No. Shares Acquired | Acquisition Price Per Share |
|---|---|---|---|
| CCYG | 9/11/07 | 500 | 5.45 |
| CCYG | 1/7/08 | 600 | 6.06 |
| CCYG | 11/21/07 | 779 | 6.33 |
| CCYG | 1/8/08 | 300 | 3.1 |
| CCYG | 1/10/08 | 500 | 3.12 |
| | | | |
| CCYG | 12/6/07 | -500 | 7.37 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Sales | Date Sold | No. Shares Sold | Selling Price Per Share |
|---|---|---|---|
| CCYG | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in the following actions filed under the federal securities laws except as detailed below:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ١٠ day of ٯ٭٥. , 2008.

Lance Armbruster

- 2 -

Please fill out the additional information. Thank you.

Name (print):  Lance Armbruster

Address:   246 Prospect St.
            La Jolla, CA 92037

County of Residence:  San Diego

Daytime Phone No.:  (619) 277-2864

Evening Phone No.:   ' ᶜ          'ᵗ

- 3 -