UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re CELLCYTE GENETIC
CORPORATION SECURITIES
LITIGATION

This order relates to:  All Actions

Case No.  C08-47RSL

ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC

## I.  INTRODUCTION

This matter comes before the Court on a motion filed by defendant Dr. Ronald
Berninger to disqualify Lane Powell PC ("Lane Powell"), counsel for defendant G. Brent
Pierce.  Dr. Berninger argues that Lane Powell should be disqualified from representing
Pierce because the firm also represents two other clients involved in this litigation and in
three related matters.  Two other defendants, CellCyte Genetics Corporation and Gary
Reys, have joined in Dr. Berninger's motion.

## II.  ANALYSIS

In January 2005, defendants Dr. Ron Berninger and Gary Reys co-founded
CellCyte Washington, a private company dedicated to human stem cell research and

ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC - 1

1 development of stem cell therapies.  After a reverse merger, CellCyte Genetics

2 Corporation was formed in February 2007.

3       Lane Powell represents Brent Pierce, a defendant in this case accused by investors

4 of engineering a "pump and dump" scheme to artificially inflate the price of CellCyte's

5 stock.  Plaintiffs allege that Pierce has a history of engaging in similar schemes.

6       Lane Powell also represents Leonard Braumberger, a long-time associate of Pierce

7 who worked as a consultant for CellCyte.  In addition, Lane Powell represents Dr.

8 Theresa Deisher, the former Vice President of Research and Development for CellCyte.

9 In that role, she participated in research and in presentations to encourage investment in

10 CellCyte.  She has filed a civil lawsuit against CellCyte, Dr. Berninger, and others

11 alleging claims arising out of her employment with CellCyte.  Specifically, she alleges

12 that CellCyte, Dr. Berninger and Reys induced her to take the job based on false

13 information, and she became a whistle blower once she learned the truth.  Dr. Deisher

14 does not allege that Pierce or Braumberger engaged in fraud.

15       The SEC has issued a formal order of investigation relating to CellCyte.  Pierce,

16 Braumberger, and Dr. Deisher have all testified before the SEC.  The SEC is also

17 investigating Pierce's role.  The U.S. Attorney's Office for the Western District of

18 Washington has opened a federal criminal investigation involving CellCyte, and Pierce is

19 a target of that investigation.  Dr. Deisher is not a defendant in this case.  Nor is she a

20 target of the investigations by the SEC or the U.S. Attorney's Office.

21       All three clients have consulted with independent counsel.  All three have stated

22 that after those consultations, they want Lane Powell to continue to represent them.

23 **A.      Standing.**

24       Lane Powell argues that Dr. Berninger lacks standing to move to disqualify the

25

26 ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC - 2

1   firm.  It contends that only a current or former client has standing to challenge an

2   attorney's representation of another party.  As a court in this district recently noted,

3   "[N]either the United States Supreme Court nor the Ninth Circuit has addressed the

4   particular question of whether the standing doctrine bars a nonclient party from moving to

5   disqualify the opposing party's counsel on the grounds of a conflict of interest."  FMC

6   Technologies, Inc. v. Edwards, 420 F. Supp.2d 1153, 1156 (W.D. Wash. 2006)

7   (considering plaintiff's motion to disqualify defense counsel).  The court in FMC

8   Technologies noted that courts may consider non-client initiated disqualification

9   challenges based on the courts' "inherent power to 'protect the integrity of their

10  processes.'"  Id. at 1156 (quoting Colyer v. Smith, 50 F. Supp.2d 966, 970 (C.D. Cal.

11  1999) (describing the "'court's well recognized power to control the conduct of the

12  attorneys practicing before it'" and to ensure the fair administration of justice); see also

13  Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980) (stating, in the disqualification context,

14  "The primary responsibility for controlling the conduct of lawyers practicing before the

15  district court rests with that court.").

16          In this case, because the motion has merit, as discussed below, the Court has a

17  "'plain duty to act.'"  FMC Technologies, 420 F. Supp.2d at 1157 (quoting In re Yarn

18  Processing Patent Validity Litig., 530 F.2d 83, 89 (5th Cir. 1976)).  It must act to protect

19  the integrity of the process and to protect the litigants.  Accordingly, the Court considers

20  Dr. Berninger's motion to disqualify Lane Powell.

21  **B.      Conflict of Interest.**

22          The Court considers the possibility that Dr. Berninger has brought this motion as a

23  litigation tactic.  Lane Powell argues that the timing of the motion supports that view.

24  However, Dr. Berninger's current counsel raised the conflict issue with Lane Powell

25

26  ORDER GRANTING MOTION TO
    DISQUALIFY LANE POWELL PC - 3

1 within a week after making their appearance.  Previous counsel had also raised the issue

2 with Lane Powell.  The evidence does not support a finding that this motion is a tactic.

3       Attorneys practicing before this Court must comply with the Washington Rules of

4 Professional Conduct.  General Local Rule 2(e)(2).  This matter is governed by

5 Washington Rule of Professional Conduct 1.7, which addresses conflicts of interest

6 involving representation of current clients.  Rule 1.7 provides as follows:

7 (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the
representation involves a concurrent conflict of interest.  A concurrent conflict of interest
8 exists if:
     (1) the representation of one client will be directly adverse to another client; or
9      (2) there is a significant risk that the representation of one or more clients will be
materially limited by the lawyer's responsibilities to another client, a former client or a
10 third person or by a personal interest of the lawyer.

11 (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a),
a lawyer may represent a client if:
12      (1) the lawyer reasonably believes that the lawyer will be able to provide
competent and diligent representation to each affected client;
13      (2) the representation is not prohibited by law;
     (3) the representation does not involve the assertion of a claim by one client
14 against another client represented by the lawyer in the same litigation or other proceeding
before a tribunal; and
15      (4) each affected client gives informed consent, confirmed in writing (following
authorization from the other client to make any required disclosures).

16

17       RPC 1.7(a)(2) permits an attorney to continue to represent conflicted current

18 clients if "the lawyer reasonably believes that the lawyer will be able to provide

19 competent and diligent representation to each affected client."  The "reasonableness"

20 issue includes an objection and subjective component.  RPC 1.0(h) & (i).

21       Lane Powell argues that there is no conflict of interest, but even if one exists, it is

22 waivable.  Waivability will turn on whether the Lane Powell attorneys reasonably believe

23 that they can provide competent and diligent representation to all three of their clients

24 simultaneously.  For purposes of resolving this motion, the Court will not delve into the

25 minutiae of who said what to whom at which meeting.  The merits of the various disputes

26 ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC - 4

1   cannot be resolved in this motion.  Rather, the Court will focus on the realities of the

2   representation.

3          Lane Powell contends that no conflict exists, in part because none of its clients is

4   asserting a claim against another client.  That factor weighs in favor of finding that the

5   clients' interests are not directly adverse.  However, the clients' interests may become

6   directly adverse in the likely event that Lane Powell is required to cross examine its own

7   clients.  At the least, Lane Powell's representation of one client will materially limit its

8   representation of another client.  Although Dr. Deisher is not a party in this proceeding,

9   she, like Braumberger, is likely to be a witness.  Similarly, Pierce and Braumberger are

10  likely witnesses in Dr. Deisher's arbitration.  For that reason, Lane Powell will be

11  required to cross examine its own clients in both proceedings.  Dr. Deisher has an interest

12  in proving fraud, which, according to plaintiffs in this case, directly involved Pierce and

13  Braumberger.  Their role in the alleged fraud is hotly contested.  The Court cannot

14  assume that plaintiffs' allegations are baseless and that the SEC and criminal

15  investigations involving Pierce (and potentially Braumberger) lack merit.  Therefore, as

16  the facts emerge, there is a probability that Dr. Deisher's interests and those of Pierce and

17  Braumberger could become adverse.  See ABA Formal Opinion 92-367 (explaining that

18  direct adverseness occurred when an attorney had to cross examine a client in an

19  unrelated matter); see also Declaration of Arthur Lachman, (Dkt. #110) ("Lachman

20  Decl.") at ¶ 31 ("Based on the facts as they develop in the pending litigation matters, at

21  some point in the future a direct adversity conflict of interest may arise if [Lane Powell]

22  lawyers determine that they must cross-examine one of their clients in the course of

23  representing one of the others").

24         The purpose of the rule against concurrent representation is based "on the duty of

25

26  ORDER GRANTING MOTION TO
    DISQUALIFY LANE POWELL PC - 5

1   undivided loyalty an attorney owes a client."  <u>Smiley v. Office of Workers Compensation</u>

2   <u>Programs</u>, 984 F.2d 278, 282 (9th Cir. 1993) (explaining that among other things, the rule

3   was designed to prevent "an honest practitioner from having to choose between

4   conflicting duties, or attempting to reconcile conflicting interests rather than enforcing a

5   client's rights to the fullest extent").  As the ABA opinion explained, "an attorney should

6   not be permitted to put himself in a position where, even unconsciously, he will be

7   tempted to 'soft pedal' his zeal in furthering the interests of one client to avoid an

8   obvious clash with those of another."  ABA Formal Opinion 92-367 at p. 3.  In this case,

9   there would be an obvious temptation for Lane Powell to "soft pedal" its cross

10  examination of its own clients to further the interest of other clients, or its own interest in

11  continuing the multiple representation.  The conflict is even more apparent than in the

12  ABA opinion because the matters are related.

13       Lane Powell and its expert contend that the conflict can be mitigated by bringing

14  in substitute counsel to cross examine its clients if necessary.  However, once a trial is

15  underway, bringing in other counsel is no simple matter.  Doing so would result in

16  significant delay for everyone involved and possibly increase costs for the clients.

17  Moreover, it would be difficult for new counsel to conduct an effective cross examination

18  without being familiar with the entire case.  Some of the clients' interests would be

19  undermined by having unfamiliar counsel conduct a cross examination rather than

20  experienced counsel.  Moreover, it is difficult to imagine how Lane Powell could advise

21  one client about whether to call another of its clients as a witness without disclosing

22  confidences and while maintaining loyalty to all.

23       In fact, the firm has an ethical obligation to share all relevant information learned,

24  regardless of the source or the context, with its clients.  Comment [31] to RPC 1.7

25

26  ORDER GRANTING MOTION TO
    DISQUALIFY LANE POWELL PC - 6

explains,

> [C]ontinued common representation will almost certainly be inadequate if one clients asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit.

The criminal investigations, Dr. Deisher's arbitration, and this case all involve the same transactions and underlying facts. This reality makes it very likely that Lane Powell will learn facts that ethically it should, but cannot, share with its other clients. For example, if Lane Powell learned confidential information from representing Pierce and Braumberger before the SEC, it must share that information with Dr. Deisher if it would help her in her arbitration. It is easy to imagine that in their interviews with the SEC, Pierce and Braumberger disclosed information about their roles in the alleged securities fraud that they would want to keep from others, including Dr. Deisher. The duty to share information and of undivided loyalty undermines Lane Powell's argument that the limited scope of its representation avoids a conflict. Reply Declaration of David Boerner, (Dkt. #124) ("Boerner Reply Decl.") at ¶ 5; Reply Declaration of John Strait, (Dkt. #125) ("Strait Reply Decl.") at p. 3.

Lane Powell argues that there is no conflict because its clients share a common interest: all three want to show that CellCyte engaged in fraud. Even if the clients' interests are aligned now, the Court cannot assume that they will not diverge later. If a deeper conflict arises later in the proceedings, dealing with it will be much more difficult and disruptive later.

Moreover, the perpetuation of a common theory of representation for all three clients is in itself very troubling. It is possible that the duty of loyalty and zealous representation is undermined by Lane Powell's interest in continued representation and/or

ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC - 7

1    its loyalty to other clients.  Strait Reply Decl. at p. 6 ("Key to Mr. Lachman's declaration

2    and [Lane Powell's] position is the claim that there is no factual inconsistency between

3    the firm's various clients.  But that claim itself is the product of the very conflict that

4    requires [Lane Powell's] disqualification").  Even absent any other issues, the Court

5    would find an unwaivable conflict based on the fact that Lane Powell, based on its own

6    interest and the interest of its other clients, could be discouraged from exploring strategies

7    that do not comport with the common theme.

8           Other issues convince the Court that the conflict is not waivable.  Lane Powell

9    essentially concedes that it has an unwaivable conflict of interest in representing its

10   clients in the criminal proceedings.  However, its duty of loyalty and to communicate

11   with its clients shows that the same conflict exists regardless of whether the context is

12   criminal or civil.  Strait Reply Decl. at p. 5 ("In effect, Lane Powell's duty to

13   communicate with its clients in the matters in which it has not withdrawn generates

14   exactly the same conflicts that would exist if it continued to directly represent these

15   clients in the criminal and SEC investigations in which it concedes it has a non-waivable

16   conflict of interest").  Moreover, the Court must consider whether Lane Powell was able

17   to make the disclosures necessary to obtain informed consent.  It may have gained

18   confidential information from one or all three of its clients in the context of this litigation,

19   Dr. Deisher's arbitration, and/or the SEC investigation.  If Lane Powell cannot disclose

20   some of the information it learned from one client to the others, then their consent to the

21   representation was not fully informed.  Comment [19] to RPC 1.7.  For all of these

22   reasons, the Court finds that Lane Powell has a conflict of interest in the concurrent

23   representation that is not waivable.

24          The Court does not reach this conclusion lightly.  Disqualification is a drastic

25

26   ORDER GRANTING MOTION TO
     DISQUALIFY LANE POWELL PC - 8

measure.  The Court is loathe to interfere with a party's choice of counsel or with the attorney-client relationship.  In this case, the matter is further complicated by the numerous proceedings involved, Dr. Deisher's rapidly-approaching arbitration, and the amount of time and money already poured into the various relationships.  The Court weighs those factors against its role in protecting the fairness of the proceedings.  In the end, the fairness of the proceedings must prevail.[1]

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS Dr. Berninger's motion to disqualify Lane Powell (Dkt. #84).  From the date this order is posted, Lane Powell is precluded from representing Pierce, Braumberger or Dr. Deisher in this matter.  It must advise Pierce to obtain substitute counsel in this case or provide the Court with *pro se* contact information.

DATED this 20th day of November, 2008.

Robert S. Lasnik
United States District Judge

---

[1] The Court also considered whether a solution less than complete disqualification might be warranted.  The parties did not suggest any such remedy, and none seems available.

ORDER GRANTING MOTION TO
DISQUALIFY LANE POWELL PC - 9